## Frank Harville v. The State.

### No. 3961. Decided October 28, 1908.

**1.—Incest—Dismissal—Severance—Allusion to Defendant's Failure to Testify.**

Where upon trial for incest the defendant was jointly indicted with the woman upon whom he was alleged to have committed the offense, and a motion for severance was granted, and the defendant placed on trial first on his own motion, when the State dismissed the case against defendant's codefendant and tended her as a witness to defendant, there was no error in the court's ruling sustaining the State's action.

**2.—Same—Evidence—Impeaching Witness.**

Upon trial for incest there was no error in permitting the State to show that a witness had made the same statement out of court as he did upon trial, the defendant having cross-examined said witness upon this subject.

**3.—Same—Evidence—Husband and Wife.**

Upon trial for incest it was error to permit the State's counsel to propound the question to a State's witness whether he ever heard any member of defendant's family deny that the woman with whom defendant was alleged to have committed the incest was the step-daughter—the daughter of defendant's wife; as this was forcing the wife indirectly to testify against the husband.

**4.—Same—Definition of Crime—Divorce or Death of First Spouse.**

Upon trial for incest it was reversible error to permit the witness to say that it was his general understanding that the first husband of defendant's wife was dead. Divorce from or death of the first husband at the time of the second marriage should have been proved affirmatively before a conviction for incest by the alleged second husband could be had. Following McGrew v. State, 13 Texas Crim. App., 340.

**5.—Same—Argument of Counsel—Practice in District Court.**

Where the defendant was jointly indicted for incest with the woman with whom the alleged incest was committed, and the State had dismissed as to her and had tendered her to the defendant as a witness, who did not place her on the stand, it was improper for State's counsel to allude to defendant's failure to use her as a witness.

Appeal from the District Court of Red River. Tried below before the Hon. Ben H. Denton.

Appeal from a conviction of incest; penalty, five years imprisonment in the penitentiary.

The codefendant was defendant's alleged step-daughter. The opinion states the case.

*S. W. Harman* and *W. W. Johnson*, for appellant.—Upon question of tendering codefendant as a witness: Garland v. State, 51 Texas Crim. Rep., 643; 104 S. W. Rep., 899. Upon question of argument of counsel: Garland v. State, 51 Texas Crim. Rep., 643; 104 S. W. Rep., 899; Taylor v. State, 50 Texas Crim. Rep., 560; 100 S. W.

Rep., 393; Gaines v. State, 8 Texas Ct. Rep., 618; Bryson v. State, 20 Texas Crim. App., 573; Jamison et al. v. U. S., 104 S. W. Rep., 872; State v. Weaver, 65 S. W. Rep., 311. On question of second marriage: Garland v. State, 51 Texas Crim. Rep., 643; 104 S. W. Rep., 899; Lindsay v. Freeman, 83 Texas, 259.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of incest and his punishment assessed at imprisonment in the penitentiary for five years. Appellant and Lela May Brotherton were jointly indicted for incest. Appellant asked for severance and was placed on trial. The case against Lela May Brotherton was dismissed. The facts in substance show that appellant and Lela May Brotherton were seen to leave the public road and go out into the river bottom, by the prosecuting witness. His statement of the facts is as follows: "After they passed me there was some tree tops that had fallen and the leaves were still green on the trees, and that put them out of my sight, and when I could see them again they were out of the buggy and she walked up against a sapling, or pretty close to a sapling, and he pulled up her clothes and it looked to me like, the best I could see, that he pulled out his male organ. I don't know that he had it out, only from the action that he made from that part of his body. After he went through those actions, as if taking out his organ he went right up against her, the best I could tell about it, and placed the lower part of his body against the part of her body where the female organ would be, and after he got in that position he was in motion like having intercourse with her. That is all I could say. Her clothes were still up at this time. I think I was some fifty or sixty yards from them, could have been closer or further. There was nothing between me and them to obstruct my view. Of course, it was heavy timber, but no undergrowth at that place. It was not very long that I saw him continue these motions. I think she saw me. It looked like she pushed him away from her, the best I could tell, and then she got in the buggy, and just as quick as he could get himself in shape, from the way he was acting, he got in the buggy. His back was to me and he was standing up and he just bent himself over this way and it seemed to me that he was working with his organ, and as quick as he could do that he got in the buggy and drove away, not very fast. Neither one of them took off their hats while I saw them. Frank Harville's back was to me at the time they were out of the buggy, it was not all the time. When they got out of the buggy, they were going from me and of course his back was to me. I was something like fifty or sixty yards from them. I could not tell whether he had his privates out, only just from the actions led me to believe that he did. I never saw them. I never saw his pants unbuttoned, I just saw him acting like

he was unbuttoning his pants. I could not say how much taller Frank is than the woman, because I never measured them. The place that I saw them was supposed to be reasonably level ground. They wer both standing up. The woman was some lower than the man, there may be a foot difference. I have not measured them, I don't know."

Bill No. 1 shows that after the jury was empaneled and the indictment read to them, but before introducing any testimony in the above case, the State, through her district attorney, asked the court to dismiss the case against Leta May Brotherton, who was indicted jointly with the defendant and tendered the said Leta May Brotherton to the defendant as a witness in his behalf. Defendant objected to the dismissal of the case against Leta May Brotherton because there was one case already pending before the court and the jury empaneled in the trial of this case, and the court could not act upon another case at the same time: That there has been a motion to sever and defendant's motion made before the court to quash the indictment against this party; and the court has seen fit to overrule both of those motions, and counsel for appellant asked a severance in the case, the court having forced them to ask for a severance by refusing to dismiss the case against her; because it is an indirect allusion to a defendant's testimony before the jury in the case; because she is a defendant and the counsel says that he tenders her to counsel for appellant as a witness, she being one of the defendants who is charged in this case, and because it is an allusion to the defendant's right to testify or failure to testify. The bill is approved with this explanation: "That the defendant had filed a motion to sever and it had been granted and he was placed on trial first on his own motion." There was no error in the ruling of the court. Where two parties are jointly indicted the district attorney, for proper cause and showing, can dismiss the case. There being no prosecution it is not amiss to tender him or her to the appellant as a witness if the appellant desires to use him.

Bill No. 2 shows that the district attorney asked O. M. Tubbs the following question, to wit: "When you first met Rosson in here on the day of the election day two years ago, I will ask you what he then told you as to who it was that he saw in this attitude down there on the creek?" Defendant objected to the question, because they have no right to prove what the witness said to other people in the absence of this defendant when that witness is present to testify in the case. The objection was on the ground of hearsay. The district attorney then asked: "I will ask you if it is not a fact that he told you about this when he first came into town or soon after he got into town?" A. "Well, I do not know that it was soon after he got here; it was not very long. I never saw Mr. Criner until the next day. Mr. Rosson told me that he thought that he knew this party by sight." The court appends this explanation: "The Court of

Criminal Appeals will see upon examination of the facts, that the defendant upon cross-examination of Jno. Criner proved that the witness had made different statements out of the court to what he did on the trial and for this reason this testimony was admitted." Under the explanation of the court the ruling is correct.

Bill No. 3 shows that the State's attorney propounded to J. W. Westerman the following questions: "Now did you ever hear Frank Harville or any member of his family deny this being the step-daughter—the daughter of his wife?" Defendant objected on the ground that same is hearsay, immaterial and not pertinent to the issue in this case. This testimony should not have been admitted. It is indirectly forcing the wife to testify against her husband since she certainly was a member of appellant's family. The State under this statement, is permitted to prove that the wife never denied the fact that her daughter was appellant's step-daughter.

Bill of exceptions No. 4 shows the State's counsel proved the following by J. W. Westerman: "Do you know the general understanding as to where Mrs. Brotherton's first husband died and when he died?" Defendant objected to the question because it would be hearsay. The court overruled the objection. The witness answered that "he was understood to be dead. I have heard Mrs. Harville state that he was dead." The defendant objected to any statement made by Mrs. Harville, because no statement made by the wife is admissible against the husband. All of which objections were overruled. The witness continued to answer as follows: "He died over at Mt. Vernon; some fellow killed him. Mr. Harville has been living down in that country about ten years; I did not know Mrs. Brotherton before she married Mr. Harville." This bill is approved with this explanation: "No objection was made to the first question in the bill, that is, 'I have heard Mrs. Harville state that he was dead.'" In the case of McGrew v. State, 13 Texas Crim. App., 340, appears the following language: "Nowhere, however, is it made to appear that at the time of the second marriage the first had been annulled, either by divorce or by the death of the first husband. Upon this point the only evidence in the record is a statement in the testimony of Ann McGrew to the effect that 'my first husband died in Grimes County, as I understand.' From this statement it is extremely uncertain that the first husband is dead; and, if dead, did he die before or after her second marriage? If after, then the second marriage was a nullity, provided she had not been divorced from him, and she could not become the lawful wife of McGrew by virtue of such illegal marriage. If she was not his lawful wife, then the illicit connection of McGrew with her daughter by the previous marriage, however reprehensible in morals, would not constitute the crime of incest in law. Divorce from or the death of the first husband at the time of the second marriage should have been proven affirmatively, because absolutely essential to the establishment of the crime charged, and to the

validity of a conviction under the circumstances stated." Clearly, under this authority, the ruling of the court was erroneous in permitting the witness to state that he understood that her former husband was dead.

Bill No. 5 complains that the district attorney commented upon the fact that appellant did not put Letta May Brotherton upon the stand, she having been indicted conjointly with her step-father, the appellant, for the crime that appellant was being tried for, the district attorney having previously dismissed the case against her, and that the district attorney in his speech called on the jury to consider appellant's failure to put her on the stand, she being in attendance upon the trial, because it was a strong circumstance to show that he was guilty. The court appends to the bill the statement that no written charge was requested by appellant to be given to the jury, to disregard such remarks. Upon another trial this argument should not be indulged.

For the errors pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Ramsey, Judge, absent.